IN THE UNITED STATES COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PIONEER TITLE COMPANY EMPLOYEE WELFARE BENEFIT TRUST,<br><br>       Plaintiff,<br><br><br><br><br><br>          vs.<br><br><br>EILEEN M. TAGUE, an individual,<br><br>          Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS, GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br>Case No. 1:08-CV-461-BLW |

This matter is before the Court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Move Venue to the District Court for the Eastern District of Washington, Plaintiff's Motion for Summary Judgment, and Defendant's Motion for Summary Judgment. For the reasons discussed below, the Court will deny Defendant's Motion to Dismiss and Defendant's Motion for Summary Judgment, and will grant Plaintiff's Motion for Summary Judgment.

I.  MOTION TO DISMISS

Defendant's Motion to Dismiss seeks dismissal for lack of personal jurisdiction.  In the alternative, Defendant seeks to transfer venue to the Eastern District of Washington.

The applicable Employee Retirement Income Security Act ("ERISA") provision, 29 U.S.C. 1132(e)(2), states:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

Section 1132(e)(2) authorizes nationwide service of process in ERISA actions.[1]  Where, as here, a federal statute provides for nationwide service, so long as process is validly served and there exists minimum contacts between the defendant and the United States, personal jurisdiction is satisfied.[2]  When evaluating personal jurisdiction under such a provision, the relevant inquiry for a defendant served under a federal nationwide service-of-process provision centers on his or her contacts with the United States, not any particular state.[3]

Defendant has not contested the sufficiency of the service.  Defendant resides in Washington and, thus, has the requisite contacts with the United States required by the statute. Defendant urges the Court to reject the national contacts test and adopt the test articulated in *Peay v. BellSouth Medical Assistance Plan*[4] and *Republic of Panama v. BCCI Holdings*

---

[1]*See Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

[2]*Id.*

[3]*See Investor Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).

[4]205 F.3d 1206 (10th Cir. 2000).

*(Luxembourg) S.A.*[5]  Neither case, however, is consistent with the binding case law of the Ninth Circuit.  Therefore, Defendant's Motion to Dismiss must be denied.

In the alternative, Defendant seeks to transfer venue to the Eastern District of Washington.  28 U.S.C. § 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Here, it is undisputed that this action could have been brought in either Washington or Idaho.  As stated above, 29 U.S.C. 1132(e)(2) states that an action "may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found."  Here, the plan is administered in Idaho and Defendant resides in Washington.

In determining whether transfer of venue is proper under § 1404(a), the Court must weigh multiple factors including: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof."[6]

Considering these factors, the Court finds that Defendant has failed to show that transfer of venue is warranted here.  These factors show that the convenience of the parties and the

---

[5]119 F.3d 935 (11th Cir. 1997).

[6]*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

witnesses can be served in either Idaho or Washington.  Therefore, the Motion to Transfer Venue will also be denied.

## II.  MOTIONS FOR SUMMARY JUDGMENT

The parties have both filed Motions for Summary Judgment.  Plaintiff's Motion for Summary Judgment has been fully briefed.  Plaintiff, however, has failed to respond to Defendant's Motion.  Both Motions raise substantially the same issues and will be addressed together, except as set out below.

A.     UNDISPUTED FACTS

Defendant Tague was a former employee of Pioneer Title Company and a member of its Employee Welfare Benefit Trust (the "Trust").  On or about January 27, 2007, Defendant was involved in an automobile accident with a third party in which she sustained personal injuries.  Following the accident, Defendant filed a claim with the Trust.  The Trust paid all medical bills related to injuries Defendant sustained from the accident.  The total amount expended by the Trust on behalf of Defendant was $124,863.09.

The Trust is partially insured by an insurance company.  Under the policy, the Trust is insured for the amount it expends over $50,000.00 on a claim.  However, the insurance company never directly pays money to the covered individual, but instead reimbursed the Trust.  Here, the trust was reimbursed $74,863.09.

The Defendant brought suit against the third party.  The claim settled for a specified amount of money.  Defendant was contacted by Plaintiff's counsel and was notified that Plaintiff had an interest in the proceeds of her settlement.  Plaintiff demanded that Defendant reimburse the Plan for the amount it paid in medical expenses.

The Plan at issue here contains a subrogation clause.  It states: "[I]f the [Plan] pay any medical expenses of a Covered Person, then the [Plan] is subrogated to the rights of the Covered Person and is entitled to reimbursement."[7]  The Plan also identifies the particular sources from which subrogation and reimbursement may be sought.

> The [Plan] is entitled to subrogation and reimbursement from any other source. For example, the [Plan] is entitled to subrogation and reimbursement from all these sources, and from any others, even if not listed here:
> (1) first-party auto insurance;
> (2) underinsured motorist coverage;
> (3) uninsured motorist coverage;
> (4) liability insurance;
> (5) victim's compensation fund;
> (6) assets of a Covered Person's bankruptcy estate; and
> (7) workers compensation.[8]

B.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."[9]  "The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of fact for trial."[10]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the

---

[7]Docket No. 23, at 55.

[8]*Id*.

[9]Fed.R.Civ.P. 56(c).

[10]*Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

nonmoving party in the face of all the evidence presented.[11]  The Court is required to construe all

facts and reasonable inferences in the light most favorable to the nonmoving party.[12]

C.      DISCUSSION

      *1.      Plaintiff's Motion*

Plaintiff moves the Court for summary judgment.  There are two legal issues which must

be resolved in determining Plaintiff's Motion: (1) whether the Trust's purchase of stop-loss

insurance makes the Plan an insured and thus subject to state anti-subrogation law; and (2)

whether Plaintiff seeks "appropriate equitable relief."

      *a.      Effect of "Stop-Loss" Insurance*

As indicated, the Trust has purchased stop-loss insurance.  Under the insurance policy,

the Trust is reimbursed for any amount it pays on a claim over $50,000.00.

The following provisions of ERISA are pertinent to the determination of this issue.  29

U.S.C. § 1144(a), the preemption clause, provides: "the provisions of this subchapter and

subchapter III of this chapter shall supersede any and all State laws insofar as they may now or

hereafter relate to any employee benefit plan . . . ."  29 U.S.C. § 1144(b)(2)(A), the savings

clause, provides: "Except as provided in subparagraph (B), nothing in this subchapter shall be

construed to exempt or relieve any person from any law of any State which regulates insurance . .

. ."  29 U.S.C. § 1144(b)(2)(B), the deemer clause, provides: "Neither an employee benefit plan .

. . nor any trust established under such a plan, shall be deemed to be an insurance company or

---

[11]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[12]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);
*Porter v. Cal. Dep't of Corr.*, 383 F.3d 1018 (9th Cir. 2004).

other insurer. . . or to be engaged in the business of insurance . . . for purposes of any law of any State purporting to regulate insurance companies . . . ."

The issue here is wether the Trust is "insured" because it has purchased stop-loss insurance.  The Ninth Circuit has held that the purchase of stop-loss insurance does not make a self-funded employee benefit plan "insured" for the purposes of ERISA preemption.[13]  A number of other courts have also reached this conclusion.[14]  Based on this binding precedent, the Trust is not subject to state anti-subrogation law.[15]

>           b.        *Appropriate Equitable Relief*

29 U.S.C. § 1132(a)(3)(B) authorizes a civil action by a fiduciary in order to obtain "appropriate equitable relief" to enforce the terms of the plan.  The issue here is whether enforcing the subrogation/reimbursement clause of the Plan constitutes "appropriate equitable relief" under the definition of the statute.

The Supreme Court in *Sereboff v. Mid Atlantic Medical Services, Inc.*,[16] considered "the circumstances in which a fiduciary under the Employee Retirement Income Security Act of 1974

---

[13]*United Food & Commercial Workers & Employers Ariz. Health & Welfare Trust v. Pacyga*, 801 F.2d 1157, 1161-62 (9th Cir. 1986).

[14]*See Bill Gray Enterprises, Inc. Employee Health and Welfare Plan v. Gourley*, 248 F.3d 206, 214 (3d Cir. 2001) (collecting cases).

[15]Defendant has raised the question of whether or not the Trust is self-funded.  *See* Docket No. 32 at 2.  However, Plaintiff has provided the Supplemental Affidavit of Cindy M. Munson which confirms that the Trust is indeed self-funded.  *See* Docket No. 36, at 2.

[16]547 U.S. 356 (2006).

(ERISA) may sue a beneficiary for reimbursement of medical expenses paid by the ERISA Plan, when the beneficiary has recovered for its injuries from a third party."[17]

In that case, Sereboff was a beneficiary under an employer sponsored health insurance plan administered by Mid Atlantic Services, Inc.  The plan provided for payment of certain covered medical expenses and contained an "Acts of Third Parties" provision.  That provision applies when a beneficiary is sick or injured as a result of the act or omission of another person or party and requires a beneficiary who receives benefits under the plan for such injuries to reimburse Mid Atlantic for those benefits from all recoveries from a third party whether by lawsuit, settlement, or otherwise.

The Sereboffs were injured in an automobile accident in California and suffered injuries.  Pursuant to the plan's coverage provision, the plan paid the couple's medical expenses.  The Sereboffs filed a tort action in state court against several third parties, seeking compensatory damages for injuries suffered as a result of the accident.  The Sereboffs eventually settled the suit for $750,000.  Mid Atlantic asserted a lien on those funds for payments it made on the Sereboffs' behalf.

Mid Atlantic filed suit against the Sereboffs under ERISA, specifically 29 U.S.C. § 1332(a)(3), seeking to collect from the Sereboffs the medical expenses it had paid on their behalf.  On appeal, the Court considered what was "appropriate equitable relief" under 29 U.S.C. § 1132(a)(3).

Under 29 U.S.C. § 1132(a)(3), a plan fiduciary may bring a civil action under ERISA "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of

---

[17]*Id*. at 359.

the plan, or (B) to obtain other appropriate equitable relief (I) to redress violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.  The Supreme Court has construed § 1132(a)(3) "to authorize only 'those categories of relief that were *typically* available in equity.'"[18] The Court in *Sereboff* found that the Acts of Third Parties provision in the plan was equitable:

> [T]he "Acts of Third Parties" provision in the Sereboffs' plan specifically identified a particular fund, distinct from the Sereboffs' general assets—"[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)"—and a particular share of that fund to which Mid Atlantic was entitled—"that portion of the total recovery which is due [Mid Atlantic] for benefits paid."[19]

Thus, in order to be equitable, the Plan here: (1) must specifically identify a fund, distinct from the beneficiaries general assets, from which reimbursement will be taken, and (2) specify a particular share to which the plan is entitled.[20]  In this case, Plaintiff is seeking funds which are settlement proceeds Defendant received from a negligent third party in a settlement.  These are not Defendant's general funds.  Additionally, Plaintiff has identified a particular amount over which it seeks to impose a constructive trust and/or equitable lien: $124,863.09.  This is the amount that Plaintiff has demonstrated it paid toward Defendant's medical bills.  The terms of the Plan specifically state that Plaintiff is entitled to reimbursement for any medical expenses of a covered person.  The Plan specifically states that it is entitled to subrogation and reimbursement from any other source (other than beneficiaries' general assets), then provides a non-exclusive list of such "other" sources.  Finally, the Plan states that it is entitled to

---

[18]*Id*. at 361 (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256-57 (1993)).

[19]*Id*. at 364.

[20]*See Admin. Comm. of Wal-Mart Stores, Inc. v. Salazar*, 525 F.Supp. 2d 1103, 1111 (D. Ariz. 2007).

subrogation and reimbursement even if the covered person has not been made whole or has not been fully compensated by the recovery.  For these reasons, the Court finds that the relief Plaintiff seeks is equitable.

Defendant's reliance on *Popowski v. Parrott*[21] is unavailing.  First, *Popowski* is not binding on this Court as it is an Eleventh Circuit case.  Further, the Plan at issue here is much closer to the United Distributors Plan, which the court upheld, than the Mohawk Plan, which the court struck down.[22]  The Mohawk Plan claimed a right to reimbursement "in full, and in first priority, for any medical expenses paid by the Plan relating to the injury or illness."[23]  But the plan did not specify that the reimbursement be made of any particular fund, as distinct from the beneficiary's general assets.[24]  Here, however, the Plan states that the plan is entitled to subrogation and reimbursement from *any other source*.  Thus, it does not suffer from the same flaw as the Mohawk Plan.  Further, the court found fault with the Mohawk Plan for requiring reimbursement "in full."[25]  This, the court found, failed "to limit recovery to a specific portion of a particular fund."[26]  The Plan at issue here is limited to reimbursement of medical expenses.

---

[21]461 F.3d 1367 (11th Cir. 2006).

[22]*Id*. at 1373-74.

[23]*Id*. at 1374.

[24]*Id*.

[25]*Id*.

[26]*Id*.

The Court must next consider whether the requested relief is "appropriate."[27]  The Supreme Court has stated: "We should expect that courts, in fashioning 'appropriate' equitable relief, will keep in mind the special nature and purpose of employee benefit plans, and will respect the policy choices reflected in the inclusion of certain remedies and the exclusion of others."[28]  Further, "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'"[29] The Ninth Circuit has interpreted *Varity* to mean that equitable relief is not appropriate where another section of ERISA provides an adequate remedy.[30]

Defendant argues that the requested relief is not appropriate, but fails to explain precisely why that is.  Plaintiff completely ignores this argument and does not discuss the appropriateness of the relief it seeks.  Here, there is no other provision of ERISA that would provide an adequate remedy.  Thus, the concern of the Court in *Varity* is not present.  Therefore, the Court finds that the relief Plaintiff seeks is appropriate.

c.   *Attorney Fees*

In its Motion, Plaintiff argues that it is entitled to an award of attorney fees and costs.  Plaintiff, however, fails to address this issue in its Memorandum in Support of Summary Judgment.  Therefore, the Court will deny Plaintiff's request for attorney fees and costs.

---

[27]*See Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996).

[28]*Id.* (internal quotation marks and citation omitted).

[29]*Id.*

[30]*Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997).

2.       *Defendant's Motion*

Defendant has also filed a Motion for Summary Judgment.  Plaintiff has not responded to the Motion.  Defendant's Motion is largely a repeat of her opposition to Plaintiff's Motion for Summary Judgment.  Defendant first argues that Plaintiff's Plan fails to satisfy reconstructive trust or lien requirements and is therefore not entitled to subrogation.  According to Defendant, all ERISA plans must satisfy equitable lien requirements before the plan can assert rights to subrogation.  Defendant asserts that the lien requirements are those found in *Sereboff*; namely, the Plan must (1) identify a particular fund that is distinct from the member's general assets, and (2) identify the particular share to which the Plan is entitled.  However, Defendant's claim is nothing more than a recharacterization of the "equitable relief" argument.  As discussed previously, the subrogation clause contained in the Plan satisfies these requirements and Defendant's efforts to construe these as a lien requirement are unavailing.

The majority of the Motion appears to address whether the relief sought by Plaintiff violates a general sense of equity.  For much of Defendant's motion, Defendant does not argue the "appropriate equitable relief" standard, but rather asserts that the Plan violates the traditional principles of equity.  To this end, Defendant cites several decisions discussing these traditional principles and arguing Congress did not intend to supplant general equity in drafting the ERISA statute.  However, the Supreme Court has clearly articulated the equitable standard that ERISA subrogation clauses must satisfy.  Thus, the controlling standard is that articulated by the Court in *Sereboff*, which standard the Plan clearly meets.

Defendant also argues that the "make-whole" doctrine should prevent Plaintiff's claims.  Under the make-whole doctrine, if an employee has not been fully compensated for his or her injuries through his or her claim against the liable third party, the Plan many not seek

reimbursement.[31]  However, in the Ninth Circuit, an employee may sign away his or her make-whole right.[32]  Defendant has done just that here.  As discussed above, the Plan clearly allows for subrogation and the Plan's right of subrogation and reimbursement is superior to and comes before any other claims.[33]  The Plan also states that it is entitled to subrogation even if the Covered Person has not been made whole or has not been fully compensated.[34]  Further, enforcing the Plan as it is written clearly promotes the purpose of ERISA and is also in the interest of the Plan and its members.  For these reasons, Defendant's Motion will be denied.

### III.  CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Move Venue to the District Court for the Eastern District of Washington (Docket No. 25) is DENIED.  It is further

ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 19) is GRANTED.  It is further

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 41) is DENIED.

The hearing set for June 23, 2009 is STRICKEN.

----

[31]*Barnes v. Indep. Auto. Dealers*, 64 F.3d 1389, 1394 (9th Cir. 1995) (" It is a general equitable principle of insurance law that, absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for her injuries, that is, has been made whole.").

[32]*See id*. at 1395.

[33]Docket No. 23 at 55.

[34]*Id,*

DATED   June 17, 2009.

BY THE COURT:

TED STEWART
United States District Judge